**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No. 08-1005-KMH |
| **CHINA STAR OF WICHITA, INC., HANK LUC, and XIN G. CHEN.,** ) ) ) | |
| **Defendants,** ) ) ) ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff's post-judgment "petition for contempt adjudication." (Doc. 8).[1] Specifically, the Secretary of Labor seeks an order holding defendants in contempt for violating the consent judgment ordering compliance with provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., (hereinafter FLSA). Defendants denied certain factual allegations in the contempt petition and an evidentiary

---

[1] This case was originally assigned to the Honorable Wesley E. Brown. Following his death, the case was reassigned to the Honorable Monti L. Belot and the parties consented to the jurisdiction of the undersigned magistrate judge to "conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings" in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 29). Because final judgment was entered in the case on May 21, 2008 (Doc. 7), the matter before the court concerns "post-trial proceedings" to enforce the judgment.

hearing was conducted on February 16, 2012. After considering the evidence, stipulations, and arguments, the court issues the following findings of fact and conclusions of law.

On January 7, 2008, the Secretary of Labor alleged that the restaurant known as China Star of Wichita, Inc. and its co-owners and managers Hank Luc and Xin G. Chen had violated the FLSA by failing to: (1) pay wages at a rate not less than the applicable minimum wage rate; (2) pay overtime at rates not less than one and one-half times the employee's regular rate; and (3) make, keep, and preserve adequate and accurate records of employee wages, hours, and working conditions. The Secretary requested a permanent injunction enjoining the defendants from violating provisions of the Fair Labor Standards Act and monetary damages for ten named individuals for the period from May 10, 2005 through May 7, 2007.

On May 21, 2008, Judge Brown entered a consent judgment requiring defendants to pay back wages for the workweeks ending May 10, 2005 through May 7, 2007. (Doc. 7). The consent judgment also provides that:

> Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this judgment be and each of them hereby is, permanently enjoined and restrained from violating the provisions of sections 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act ....

The judgment expressly prohibits defendants from (1) employing any person without properly compensating the employee for working in excess of 40 hours per workweek and (2) failing to keep and preserve adequate and accurate records of their employees' wages, hours, and conditions of employment as required by statute and federal regulations. The

court retained jurisdiction over the action and the parties to enforce provisions of the consent judgment. (Doc. 7, p. 3). Both Hank Luc and Xin G. Chen signed the consent judgment as defendants in their "individual" capacities. Hank Luc also signed for China Star of Wichita, Inc. in his capacity as "co-owner and registered agent."

## **CONTEMPT**

China Star of Wichita, Inc. was a Kansas corporation but forfeited its corporate status in 2002.[2] Mr. Luc and Mr. Chen each had a nine percent ownership interest in the restaurant during the relevant time period.[3] The restaurant was located in Wichita, Kansas and conducted business under the name of China Star Super Buffet.[4] Defendants stipulate that the business was covered by the Fair Labor Standards Act and that they were subject to the Act's minimum wage, overtime wage and record keeping requirements.[5]

Xin G. Chen was regularly present at the restaurant during the investigation period of

---

[2] For reasons that are unclear, the restaurant filed corporate income tax returns as recently as 2010.

[3] Yequin Q. Zhang, Xin X. Chen, Van S. Luc, Pong K Hoo, and Lou T. Luc also had ownership interests in the restaurant during the relevant period.

[4] Luc alleges that the restaurant closed in 2011 and that a "new" China Star Super Buffet opened at the same location. Mr. Luc asserts that he is still a manager but does not have any ownership interest in the new restaurant.

[5] The annual dollar volume (ADV) for the restaurant was $683,132 for 2008, $645,381 for 2009, and $596,451 for 2010 and defendants' employees regularly handled food products manufactured outside the state of Kansas.

May 21, 2008 through March 19, 2010 and he hired, supervised, and directed the activities of various employees.[6] Mr. Chen worked with employees in the kitchen area of the restaurant. According to his counsel, Chen left the restaurant and currently resides in California. He did not personally appear for the hearing.

Hank Luc also was regularly present at the restaurant from May 21, 2008 through August 2011 and he hired, supervised, and directed the activities of various employees. Mr. Luc managed the "front" of the restaurant where he seated and served customers. Mr. Luc also managed the payment of all employees.

As part of the investigation, Shannon Rebolledo, Assistant District Director of Wage and Hour, and Aaron Sturdivant, Wage and Hour Investigator, interviewed defendants' employees and reviewed payroll records provided by defendants. The written statements from seven employees consistently reveal that they typically: (1) worked from 10 a.m. to 10 p.m. daily, (2) had a 30 minute daily break, and (3) were paid a cash salary ranging from $525 to $950 on a semi-monthly basis. The statements also confirm that defendants did not keep records of employee hours worked on either a daily or weekly basis.

Defendants object to the admission of six of the employees' written statements, arguing that they are improper hearsay.[7] The written statements concerning the hours worked

---

[6] Some employees referred to Mr. Chen as "Aqua."

[7] One of the seven statements was given by Jorge Zavaleta, a witness who was present in the courtroom and provided testimony. Because he testified, a hearsay objection was not lodged against Mr. Zavaleta's written statement.

and rates of pay are not hearsay. Fed. Rule of Evidence 801(d)(2)(D) provides that an out-of-court statement is not hearsay if "offered against an opposing party and . . . made by the party's agent or employee on a matter within the scope of that relationship and while it existed." There is no question the written statements were made while the individuals were employed by defendants and address matters within the scope of that relationship. Mr. Luc's argument that the statements are from employees working in the kitchen and therefore were not *his* employees or agents is not persuasive. The corporate charter for the restaurant was forfeited in 2002 and Mr. Luc had a ownership interest and management position in what was essentially a general partnership. Equally important, Mr. Luc was responsible for paying all of the employees for their work at the restaurant. Because the employees' written statements concern matters "within the scope of that relationship," the statements are admissible against Mr. Luc and his co-defendants.

Mr. Luc's testimony concerning hours worked by employees was similar to their written statements - - with some exceptions. He agreed that employees generally started work at approximately 10:00 a.m. and that the restaurant was open six days a week. However, he testified that employees were not required to work *all* afternoon and could sit outside or run errands, if necessary. He also said some employees were allowed to leave before 10:00 p.m. on "slow nights." However, defendants did not record or produce *any* records of the hours an employee worked *each* day and *each* week. Because defendants failed to keep records of the employees' daily and weekly hours as required by the consent judgment, the amount of time an employee may have taken off "during the afternoon" cannot

be determined with precision. Mr. Luc's testimony concerning "hours worked" during the afternoon and at the end of the shift was extremely vague and not credible.

Jorge Zavaleta worked at the restaurant during the relevant time period and was hired by Mr. Chen. His testimony is consistent with the employees' written statements that work started around 10:00 a.m. and ended at approximately 10:00 p.m., six days a week. He agreed that employees could take a break in the afternoon for "40-45 minutes" to take care of personal matters if they requested permission but otherwise worked "if something needed to be taken care of at work." He also testified that he was paid a semi-monthly salary in cash by Mr. Luc and that other employees were similarly paid in cash on a semi-monthly basis by Mr. Luc. Mr. Zavaleta's testimony was credible and persuasive.

Defendants called Ramon Alejandro in an attempt to impeach the testimony of Jorge Zavaleta. However, Mr. Alejandro's testimony supported Mr. Zavaleta's testimony concerning the general work schedule and the fact that employees were paid on a salary basis rather than an hourly basis.[8] The hours which Mr. Alejandro worked *each* day were not recorded and he was paid in cash with no withholding for income or Social Security taxes.

The only employee payroll records which defendants "maintained" and produced are a collection of "EMPLOYEE PAYROLL RECORDS" that Mr. Luc had the employees sign after the consent judgment was entered. The one-page form reflects (1) the employee's name, (2) the *two-week pay period* covered by the "record," (3) the total number of regular

---

[8] Similar to Mr. Zavaleta, Ramon Alejandro testified that he could "check out" at 2:00 p.m. *if he needed to* and return around 4:00 p.m.

-6-

hours worked and rate, (4) the total number of overtime hours worked and rate, (5) the total pay for the period, (6) a statement that the "record" is accurate and that there would be Federal, State, FICA, and Medicare payroll deductions and (7) the employee's signature.

Mr. Luc's "records" are inaccurate and they also appear to contain fabricated information.[9] For example, contrary to Mr. Luc's "EMPLOYEE PAYROLL RECORD" form, employees were paid semi-monthly rather than every two weeks. Moreover, employees were paid a flat salary in cash with no adjustment for the number of hours worked and no payroll taxes of any kind were withheld or paid on the employee's behalf. Although employees signed the sheet attesting to the accuracy of the record, Mr. Alejandro testified he could not read the form and he simply signed as he was instructed to do. Mr. Zavaleta complained to Luc that the "record" was incorrect, but was told to sign because the Secretary required the form before payment could be made. Mr. Zavaleta signed without further comment in order to receive his semi-monthly cash salary.

As noted above, this matter is before the court on the Secretary's petition for a contempt finding against defendants for failure to comply with the consent judgment. As the moving party, the Secretary has the initial burden of proving by clear and convincing evidence that (1) a valid order existed, (2) that defendants had knowledge of the order, and

---

[9] China Star's "corporate tax" returns for 2008 and 2009 were admitted into evidence. (Exhibits B and C). The amounts shown as deductions for "salaries and wages" are considerably less than the amounts shown on the "Employee Payroll Records" provided to the Secretary during her investigation. Exhibits B and C corroborate that defendants fabricated information concerning the wages which they paid in cash.

(3) that defendants disobeyed the order. United States v. Ford, 514 F. 3d 1047, 1051 (10th Cir. 2008). The first two requirements are clearly established by (1) the valid consent judgment entered in this case and (2) defendants' execution of the consent judgment.

The Secretary has also shown by clear and convincing evidence that defendants disobeyed the order. The consent judgment requires defendants to make, keep, and preserve adequate and accurate records of their employees, wages, hours and conditions of employment as required by statute and 29 C.F.R. § 516 and, when requested, to present such records to the Secretary's representatives. (Doc. 7, pages 1-2). The records kept by defendants fail to show, among other things, the hours worked *each work day* and *each work week*, the *regular rate of pay*, and the total straight time and overtime earnings for *each workweek*. Moreover, as discussed above, the records which defendants *did* produce do not accurately reflect the employees' wages and hours.

The consent judgment also requires defendants to properly pay minimum wages and overtime wage rates in compliance with sections 7 and 15(a)(2) of the FLSA. The Secretary has shown by clear and convincing evidence that defendants' annual sales volume was greater than $500,000 and that their employees handled, sold, or otherwise worked with goods that had been moved in, or produced, for interstate commerce. The Secretary has also shown by clear and convincing evidence that defendants failed to properly pay minimum wages and overtime pay to employees. For example, Alicia Jacinto Reyes worked six days a week for 11.5 hours each day and was paid $575 in cash semi-monthly. If converted to a weekly 40-hour pay period, her history reflects that defendants paid Ms. Reyes at an hourly

rate that is $3.40 <u>below</u> the applicable minimum wage rate. <u>See</u>, Exhibit G-14, p. 22. Defendants also failed to pay her at the overtime rate for time worked in excess of 40 hours per workweek. <u>Id.</u>

Because the Secretary has shown by clear and convincing evidence that defendants violated the consent judgment, the burden shifts to defendants to show either: (1) they have complied with the order or (2) they could not comply with the order. <u>United States v. Ford</u>, 514 F.3d at 1051. Defendants offer no evidence that they complied with the consent judgment's record keeping requirements nor have they shown that, for reasons beyond their control, they were unable to comply with the record keeping requirements. Accordingly, defendants are in contempt of the consent judgment requirements concerning record keeping.

Defendants similarly have not shown that they complied with the consent judgment's requirement to properly pay minimum wages and overtime rates to their employees. Viewed in its best light, defendants' proof shows that some employees may have taken breaks in the afternoon to address personal matters and errands and that the Secretary's calculation of the hours worked per day is overstated by one to two hours. Although the number of hours worked each day by each employee cannot be determined with exact precision, the Secretary has demonstrated that defendants did not compensate the employees properly for work performed. Moreover, defendants cannot complain about the lack of exactitude because their failure to keep proper records created the problem. <u>See</u> <u>Anderson v. Simmons Petroleum Corp.</u>, 328 U.S. 680 (1946). The Secretary has presented evidence sufficient to support reasonable inferences of the amount and extent of the time worked and defendants have not

carried their burden of showing that they either complied or were unable to comply with the order for reasons beyond their control. Accordingly, defendants are in contempt of the consent judgment's requirement to pay minimum wages and overtime rates.

## **REMEDY**

Having concluded that defendants are in contempt of the consent judgment, the court must determine an appropriate remedy for defendants' failure to keep proper records and properly pay minimum wages and overtime rates. Based on the exhibits, testimony, and employee statements, the court finds that the Secretary's back wage computations, introduced in Exhibit G-14, are the best and most reasonable approximation of the amounts due the following 11 employees.:

- Alicia Jacinto Reyes worked six days a week for approximately 11.5 hours each day for a total of 69 hours per week. She was paid $575 in cash on a semi-monthly basis and her applicable period of employment was December 19, 2009 through March 13, 2010. She is owed $3,053.54 in minimum wages and $1,366.63 in overtime compensation.

- Jose Lima Hernandez worked six days a week for approximately 12 hours each day for a total of 72 hours per week. He was paid $700 in cash on a semi-monthly basis and his applicable period of employment was November 21, 2009 through March 13, 2010. He is owed $3,382.15 in minimum wages and $1,972.00 in

overtime compensation.

- Cesar Alvaro Navarro worked six days a week for approximately 12 hours a day on Friday and Saturday, 11.5 hours a day on Monday, Tuesday, Thursday, and Sunday for a total of 70 hours per week. He was paid $700 in cash semi-monthly and his applicable period of employment was May 24, 2008 through March 13, 2010. He is owed $14,317.80 in minimum wages and $9,575.21 in overtime compensation.

- Joel Paulino Garcia worked six days a week for approximately 12 hours a day on Friday and Saturday, 11.5 hours a day on Monday, Wednesday, Thursday and Sunday for a total of 70 hours per week. He was paid $775 in cash semi-monthly and his applicable period of employment was September 27, 2008 through March 13, 2010. He is owed $13,096.56 in minimum wages and $7,813.50 in overtime compensation.

- Laura Santos worked six days a week for 11 hours a day on Friday and Saturday, 10.5 hours a day on Monday, Tuesday, Wednesday, and Sunday for a total of 64 hours per week. She was paid $700 in cash semi-monthly and her applicable period of employment was November 22, 2008 through March 13, 2010. She is owed $5,102.23 in minimum wages and $2,916.60 in overtime compensation.

- Jorge Zavaleta worked six days a week for approximately 12 hours a day on Friday and Saturday, 11.5 hours a day on Tuesday, Wednesday, Thursday, and Sunday for a total of 70 hours per week. He was paid $950 in cash semi-monthly

and his applicable period of employment was June 20, 2009 through March 13, 2010. He is owed $2,399.93 in minimum wages and $4,178.25 in overtime compensation.

- Socorro Hernandez worked six days a week for approximately 11.5 hours each day for a total of 69 hours per week. She was paid $650 in cash semi-monthly and her applicable period of employment was December 20, 2008 through November 14, 2009. She is owed $6,228.98 in minimum wages and $4,721.20 in overtime compensation.

- Ramon Alejandro worked approximately 69 hours per week with an average semi-monthly salary of $733.33.[10] His applicable period of employment was September 27, 2008 through November 14, 2009. He is owed $7,593.03 in minimum wages and $5,860.90 in overtime compensation.

- Osbaldo Garcia Santos worked approximately 69 hours per week with an average semi-monthly salary of $733.33. His applicable period of employment was September 20, 2008 through October 18, 2008. Mr. Santos is owed $568.35 in minimum wages and $474.88 in overtime compensation.

- Carlos Santiago Ramirez worked approximately 69 hours per week with an

---

[10] Mr. Alejandro testified that he sometimes took time off in the afternoon to walk to the Goodwill store or to take a break. His testimony concerning his "off time" was exceedingly vague and difficult to follow. Because this "off time" uncertainty is the result of defendants' failure to comply with the record keeping requirements, the court has discounted Mr. Alejandro's "off time" testimony in determining a remedy.

average semi-monthly salary of $733.33. His applicable period of employment was August 30, 2008 through May 30, 2009. He is owed $4,546.82 in minimum wages and $3,799.00 in overtime compensation.

- Miguel Tum Lux worked an average of 69 hours per week for an average semi-monthly salary of $733.33. His applicable period of employment was September 20, 2008 through November 15, 2008 and he is owed $568.35 in minimum wages and $474.88 in overtime compensation.

These eleven employees are due a total of $111,697.46 in unpaid minimum wages and overtime compensation and defendants must pay this amount to the Secretary to purge themselves of contempt. The obligation to pay this amount is joint and severable.

In addition, the court will require defendants to pay an additional $111,697.46 as liquidated damages pursuant to 29 U.S.C. 216(b). These liquidated damages are imposed because defendants' failure to keep appropriate records and properly pay their employees was willful and intentional and the information contained on defendants' record of hours worked was fabricated.[11] The liquidated damages are also appropriate because of the delay experienced by the employees in receiving proper compensation.

---

[11]

Defendants were the subject of an earlier FLSA investigation and Mr. Luc told the Department of Labor on May 18, 2006 that he would purchase a time clock "that day" to keep a proper record of the hours which employees worked. He did not follow through and a second investigation was commenced which resulted in the consent judgment eventually entered in this case. This contempt proceeding is the third round concerning defendants' failure to keep proper records; therefore, liquidated damages are warranted.

**IT IS THEREFORE ORDERED** that the Secretary's petition for contempt (**Doc. 8**) is **GRANTED** and China Star of Wichita, Inc., Hank Luc, and Xin G. Chen are in contempt of the consent judgment filed May 21, 2008. To purge themselves of contempt, the defendants must pay the Secretary $223,394.92 or submit an acceptable payment plan to the Secretary and court by **April 29, 2012.** The liability to pay this amount is joint and several. Failure to comply may result in the court's exercise of its contempt power to assure compliance with this order and the consent judgment.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 28th day of March 2012.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge